**LEATHERSTOCKING 1983 PARTNER-SHIP, Sam I. Brown, a Partner Other than the Tax Matters Partner, Petitioner–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**No. 07–1781–ag.**

United States Court of Appeals, Second Circuit.

Oct. 20, 2008.

Richard J. Sapinski, Steven R. Rowland, Sills Cummis Epstein & Gross, P.C., Newark, N.J., for Petitioner–Appellant.

Richard T. Morrison, Acting Assistant Attorney General, Bruce R. Ellison, Ivan C. Dale, Department of Justice, Tax Division, for Respondent–Appellee.

PRESENT: CHESTER J. STRAUB, REENA RAGGI, and JANE R. ROTH,[1] Circuit Judges.

## SUMMARY ORDER

Petitioner-appellant Sam I. Brown, a limited partner in the Leatherstocking 1983 Partnership (LS83), appeals from a decision of the United States Tax Court upholding adjustments proposed by the Internal Revenue Service (IRS) to LS83's 1983 and 1984 partnership tax returns. *See Leatherstocking 1983 P'ship v. Comm'r*, No. 2753–98, 2006 WL 2346449, 2006 Tax Ct. Memo LEXIS 167 (T.C. Aug. 14, 2006). "We review the Tax Court's legal conclusions de novo and its factual findings for clear error." *Madison Recy-*

cling Assocs. v. C.I.R., 295 F.3d 280, 285 (2d Cir.2002). We assume the parties' familiarity with the facts and the record of prior proceedings, which we describe only as necessary to explain our decision.

From 1986 until 1997, the IRS asked for and received consents from LS83 Tax Matters Partner Robert Steele to extend the period of time in which the agency could assess partnership taxes for the years 1983 and 1984. The IRS concedes that, but for these consents, the adjustments at issue would have been time barred. Beginning in 1992, however, Steele was subject to a plea agreement with the IRS stemming from his involvement in arms dealing and securities fraud. Brown contends that Steele's plea agreement caused a disabling conflict of interest under this Court's precedent and that, accordingly, the consents he executed are invalid. We agree.

In *Transpac Drilling Venture 1982–12 v. Commissioner*, we addressed the issue of "whether, as a result of being placed under criminal investigation by the IRS (and hence becoming subject to pressure by the IRS), the tax matters partners (TMPs) of various partnerships labored under a conflict of interest and thereby were disqualified from binding the partnerships." 147 F.3d 221, 222 (2d Cir.1998). In that case, the IRS sought consents for extensions from the Transpac TMPs, who were under criminal scrutiny, after the limited partners refused. *Id.* at 224. The TMPs ultimately cooperated in a criminal prosecution of the Transpac promoter and were granted immunity or, in some cases, offered suspended sentences. *Id.* at 223. We held that, where the IRS knew that the TMPs had a "powerful incentive to ingratiate themselves to the government— be it the civil department of the IRS, the

---

1. The Honorable Jane R. Roth, of the United States Court of Appeals for the Third Circuit, sitting by designation.

criminal division, or even the United States Attorney's Office"—the individuals were operating under a disabling conflict of interest and the agency could not rely on their consents to bind the limited partners. *Id.* at 227. The consents executed by Steele fall squarely within *Transpac*'s holding.

At least from 1990 onward (and possibly earlier), the IRS was aware that Steele was defrauding the LS83 limited partners by misrepresenting the fair market value of the partnership's assets and by executing consents to extensions without informing the partners. The IRS's knowledge of these facts may alone have been sufficient to put the agency on notice that Steele and the limited partners had conflicting interests regarding the tax status of LS83. We need not decide this question, however, because the IRS knew of such a conflict when, in 1992, Steele pleaded guilty to one count of structuring transactions (for crimes unrelated to the LS83 partnership) in exchange for his agreement to "cooperate fully with the IRS in an expeditious manner in order to resolve his tax liability and any tax liability and examination of" the Leatherstocking entities, including LS83. The plea agreement provided that violation of "any provisions" of the agreement would result in further criminal charges against Steele for "any federal criminal violation of which this Office has knowledge, including but not limited to money laundering, structuring, and income tax violations." What is more is that the plea agreement authorized the IRS to advise the U.S. Attorney's Office of the details of Steele's cooperation with it so that the Office could inform his sentencing judge of this information. This plea agreement was a clear "incentive" for Steele "to ingratiate [himself] to the government," *id.,* particularly since he would not be sentenced until almost a year later. Nonetheless, the government continued to seek and secure consents from Steele, without the limited partners' knowledge, until several years into his incarceration.

In distinguishing the instant case from our decision in *Transpac*, the Tax Court noted that, here, there was no evidence that the IRS "attempted to mislead the [LS83] limited partners about the existence of Steele's criminal problems or instructed Steele to do so." Indeed, the parties agree that, unlike the situation faced by the *Transpac* Court, the record contains no evidence of the government misleading the limited partners. Nonetheless, the government *knew* that Steele was operating under a conflict of interest when he executed the requested consents, and the consents are therefore invalid.

Because we hold that the existing record demonstrates the existence of a disabling conflict of interest, Brown's request for further discovery is moot.

Accordingly, the tax adjustments are time barred, and we REVERSE the decision of the Tax Court.